UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | ) | |
| BWA LPW LLC | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 1:24-cv-12066-WGY |
| | ) | |
| DAVID H. ALLEN, | ) | |
| BWA WELLESLEY LLC, and | ) | |
| PROVIDENCE FINANCIAL ADVISORS, LLC | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| _____ | ) | |
| | ) | |
| DAVID H. ALLEN, | ) | |
| BWA WELLESLEY LLC, and | ) | |
| PROVIDENCE FINANCIAL ADVISORS, LLC | ) | |
| | ) | |
| PLAINTIFFS-IN-COUNTERCLAIM, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BWA LPW LLC, AMY O'CONNELL, AND | ) | |
| LEO PATRICK WHITE, | ) | |
| | ) | |
| DEFENDANTS-IN-COUNTERCLAIM. | ) | |
| _____ | ) | |

**DEFENDANTS' ANSWER TO VERIFIED COMPLAINT AND COUNTERCLAIMS AGAINST BWA LPW LLC, AMY O'CONNELL, AND LEO PATRICK WHITE**

Defendants, David H. Allen ("Allen"), BWA Wellesley LLC ("BWA-W"), and Providence Financial Advisors, LLC ("PFA") (collectively, "Defendants"), submit the following answer and affirmative defenses in response to the Verified Complaint filed by BWA LPW LLC ("BWA"). Additionally, Plaintiffs-in-counterclaim David H. Allen, BWA Wellesley LLC, and Providence

1

Financial Advisors, LLC submit the following counterclaims against Defendant-in-counterclaim, BWA LPW LLC, and Defendants-in-counterclaim, Amy O'Connell and Leo Patrick White, who are joined pursuant to Fed. R. Civ. P. 13(h), 19, and 20.

<u>**NATURE OF THIS ACTION**</u>

1. Paragraph 1 of the Verified Complaint consists of legal conclusions, general characterizations of the parties, and the nature of this action to which no response is required. To the extent a response is required, Defendants deny all factual assertions therein.

2. Defendants deny the allegations in paragraph 2 of the Verified Complaint.

3. Defendants deny the allegations in paragraph 3 of the Verified Complaint.

4. Defendants deny the allegations in paragraph 4 of the Verified Complaint.

5. Defendants deny the allegations in paragraph 5 of the Verified Complaint.

6. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Verified Complaint. They call upon Plaintiffs to prove the same.

7. Defendants deny the allegations in paragraph 7 of the Verified Complaint.

8. Defendants deny the allegations in paragraph 8 of the Verified Complaint.

9. Defendants deny the allegations in paragraph 9 of the Verified Complaint.

10. Paragraph 10 of the Verified Complaint consists of legal conclusions, general characterizations of the parties, and the nature of this action to which no response is required. To the extent a response is required, Defendants deny all factual assertions therein.

## PARTIES

7.   Defendants lack knowledge or information sufficient at this time to either admit or deny the allegations contained in paragraph 7 of the Verified Complaint.[1]

8.   Defendants admit the allegations in paragraph 8 of the Verified Complaint.

9.   Defendants admit that BWA Wellesley was dissolved, without Allen's knowledge, and further note that Allen filed a Certificate of Organization for BWA Wellesley with the Secretary of State on or around November 4, 2024.

10.  Defendants admit the allegations contained in paragraph 10 of the Verified Complaint.

## JURISDICTION AND VENUE

11.  To the extent that paragraph 11 of the Verified Complaint contains a legal conclusion or legal conclusions, Defendants need not respond. Defendants admit that Plaintiff purports to invoke the Court's jurisdiction pursuant to 28 U.S.C. § 1331.

12.  To the extent that paragraph 12 of the Verified Complaint contains a legal conclusion or legal conclusions, Defendants need not respond.

13.  To the extent that paragraph 13 of the Verified Complaint contains a legal conclusion or legal conclusions, Defendants need not respond.

14.  To the extent that paragraph 14 of the Verified Complaint contains a legal conclusion or legal conclusions, Defendants need not respond. Defendants admit that Plaintiff purports to invoke the Court's jurisdiction pursuant to 28 U.S.C. § 1391.

## FACTS

15.  Defendants admit the allegations in paragraph 15 of the Verified Complaint.

---

[1] The paragraphs in the Verified Complaint are misnumbered; this Answer preserves the paragraph numbering used in the Verified Complaint.

16. Defendants admit that Allen acquired the balancewealtheradvisor.com and balancewealtheradvisors.com domain names and business telephone numbers, but otherwise deny the remaining allegations in paragraph 16 of the Verified Complaint.

17. Defendants admit that email addresses using the domain name, balancewealthadvisor.com, were established for employees and other associated persons of Balance Wealth Advisors, but otherwise deny the remaining allegations in paragraph 17 of the Verified Complaint.

18. Defendants deny the allegations as characterized in paragraph 18 of the Verified Complaint. Allen has, at all relevant times, maintained the professional licenses required to work in the financial services industry as both a registered representative and investment advisor representative.

19. Defendants admit that Allen established Balance Wealth Advisors as his "doing business as" ("d/b/a") name while affiliated with LPL Financial.

20. Defendants deny the allegations in paragraph 20 of the Verified Complaint.

21. Defendants deny the allegations in paragraph 21 of the Verified Complaint.

22. Defendants deny the allegations in paragraph 22 of the Verified Complaint.

23. Defendants admit that BWA LWP LLC was formed on or around January 19, 2021, but otherwise deny the remaining allegations in paragraph 23 of the Verified Complaint.

24. Defendants admit the allegations in paragraph 24 of the Verified Complaint.

25. To the extent the allegations in paragraph 25 of the Verified Complaint seek to paraphrase or characterize the contents of a written agreement, the Defendants respectfully refer the Court to the text of the written agreement for its content. Defendants deny the allegations to the extent that they are inconsistent with the document or the events or dealings which occurred between the Parties and the signatories to the written agreement.

26. Defendants deny the allegations in paragraph 26 of the Verified Complaint.

27. Defendants deny the allegations in paragraph 27 of the Verified Complaint.

28. Defendants deny the allegations in paragraph 28 of the Verified Complaint.

29. Defendants admit the allegations in paragraph 29 of the Verified Complaint.

30. To the extent the allegations in paragraph 30 of the Verified Complaint seek to paraphrase or characterize the contents of a written agreement, the Defendants respectfully refer the Court to the text of the written document for its content. Defendants deny the allegations to the extent that they are inconsistent with the document or the events or dealings which occurred between the Parties and the signatories to the written agreement.

31. To the extent the allegations in paragraph 31 of the Verified Complaint seek to paraphrase or characterize the contents of a written agreement, the Defendants respectfully refer the Court to the text of the written agreement for its content. Defendants deny the allegations to the extent that they are inconsistent with the document or the events or dealings which occurred between the Parties and the signatories to the written agreement.

32. Defendants lack knowledge or information sufficient at this time to either admit or deny the allegations contained in paragraph 32 of the Verified Complaint.

33. To the extent the allegations in paragraph 33 of the Verified Complaint seek to paraphrase or characterize the contents of a written agreement, the Defendants respectfully refer the Court to the text of the written document for its content. Defendants deny the allegations to the extent that they are inconsistent with the document or the events or dealings which occurred between the Parties and the signatories to the written agreement.

34. Defendants deny the allegations in paragraph 34 of the Verified Complaint.

35. Defendants deny the allegations in paragraph 35 of the Verified Complaint.

36. To the extent the allegations in paragraph 36 of the Verified Complaint seek to paraphrase or characterize the contents of a written agreement, the Defendants respectfully refer the Court to the text of the written document for its content. Defendants deny the allegations to the extent that they are inconsistent with the document or the events or dealings which occurred between the Parties and the signatories to the written agreement.

37. To the extent the allegations in paragraph 37 of the Verified Complaint seek to paraphrase or characterize the contents of a written agreement, the Defendants respectfully refer the Court to the text of the written document for its content. Defendants deny the allegations to the extent that they are inconsistent with the document or the events or dealings which occurred between the Parties and the signatories to the written agreement.

38. Defendants deny the allegations in paragraph 38 of the Verified Complaint.

39. To the extent the allegations in paragraph 39 of the Verified Complaint seek to paraphrase or characterize the contents of a written agreement, the Defendants respectfully refer the Court to the text of the written document for its content. Defendants deny the allegations to the extent that they are inconsistent with the document or the events or dealings which occurred between the Parties and the signatories to the written agreement.

40. To the extent the allegations in paragraph 40 of the Verified Complaint seek to paraphrase or characterize the contents of a written agreement, the Defendants respectfully refer the Court to the text of the written document for its content. Defendants deny the allegations to the extent that they are inconsistent with the document or the events or dealings which occurred between the Parties and the signatories to the written agreement

41. To the extent the allegations in paragraph 41 of the Verified Complaint seek to paraphrase or characterize the contents of a written agreement, the Defendants respectfully refer the

Court to the text of the written document for its content. Defendants deny the allegations to the extent that they are inconsistent with the document or the events or dealings which occurred between the Parties and the signatories to the written agreement.

42. To the extent the allegations in paragraph 42 of the Verified Complaint seek to paraphrase or characterize the contents of a written agreement, the Defendants respectfully refer the Court to the text of the written document for its content. Defendants deny the allegations to the extent that they are inconsistent with the document or the events or dealings which occurred between the Parties and the signatories to the written agreement.

43. To the extent the allegations in paragraph 43 of the Verified Complaint seek to paraphrase or characterize the contents of a written agreement, the Defendants respectfully refer the Court to the text of the written document for its content. Defendants deny the allegations to the extent that they are inconsistent with the document or the events or dealings which occurred between the Parties and the signatories to the written agreement.

44. To the extent the allegations in paragraph 44 of the Verified Complaint seek to paraphrase or characterize the contents of a written agreement, the Defendants respectfully refer the Court to the text of the written document for its content. Defendants deny the allegations to the extent that they are inconsistent with the document or the events or dealings which occurred between the Parties and the signatories to the written agreement.

45. Defendants deny the allegations in paragraph 45 of the Verified Complaint.

46. Defendants deny the allegations in paragraph 46 the Verified Complaint.

47. Defendants deny the allegations in paragraph 47 of the Verified Complaint.

48. Defendants deny the allegations in paragraph 48 of the Verified Complaint.

49. Defendants deny the allegations in paragraph 49 of the Verified Complaint.

50. Defendants deny the allegations in paragraph 50 of the Verified Complaint.

51. Defendants lack knowledge or information sufficient to either admit or deny the allegations in paragraph 51 of the Verified Complaint.

52. Defendants deny the allegations in paragraph 52 of the Verified Complaint.

53. Defendants deny the allegations in paragraph 53 of the Verified Complaint.

54. Defendants deny the allegations in paragraph 54 of the Verified Complaint.

55. Defendants deny the allegations in paragraph 55 of the Verified Complaint.

56. Defendants deny the allegations in paragraph 56 of the Verified Complaint.

57. To the extent the allegations in paragraph 57 of the Verified Complaint seek to paraphrase or characterize the contents of a written agreement, the Defendants respectfully refer the Court to the text of the written document for its content. Defendants deny the allegations to the extent that they are inconsistent with the document or the events or dealings which occurred between the Parties and the signatories to the written agreement.

58. Defendants deny the allegations in paragraph 58 of the Verified Complaint.

59. Defendants deny the allegations in paragraph 59 of the Verified Complaint.

60. Defendants deny the allegations in paragraph 60 of the Verified Complaint.

61. Defendants deny the allegations in paragraph 61 of the Verified Complaint.

62. Defendants deny the allegations in paragraph 62 of the Verified Complaint.

63. Defendants admit that the Parties attempted mediation but deny the remaining allegations in Paragraph 63 of the Verified Complaint.

64. Defendants admit the allegations in paragraph 64 of the Verified Complaint.

65. Defendants lack knowledge or information sufficient at this time to either admit or deny the allegations in paragraph 65 of the Verified Complaint.

66. Defendants deny the allegations in paragraph 66 of the Verified Complaint.

67. Defendants deny the allegations in paragraph 67 of the Verified Complaint.

68. Defendants deny the allegations in paragraph 68 of the Verified Complaint.

69. Defendants admit the allegations in paragraph 69 of the Verified Complaint.

70. Defendants deny the allegations in paragraph 70 of the Verified Complaint.

71. Defendants deny the allegations in paragraph 71 of the Verified Complaint.

72. Defendants deny the allegations in paragraph 72 of the Verified Complaint.

73. Defendants lack knowledge or information sufficient at this time to either admit or deny the allegations in paragraph 73 of the Verified Complaint.

74. Defendants lack knowledge or information sufficient at this time to either admit or deny the allegations in paragraph 74 of the Verified Complaint.

75. Defendants deny the allegations in paragraph 75 of the Verified Complaint.

76. Defendants admit that Allen modified the Google business account previously associated with Balance Wealth Advisor's location in Providence, Rhode Island to reflect that his new entity, PFA, was located at that address, but otherwise deny the remaining allegations in paragraph 76 of the Verified Complaint.

77. Defendants lack knowledge or information sufficient at this time to either admit or deny the allegations in paragraph 77 of the Verified Complaint.

78. Defendants lack knowledge or information sufficient at this time to either admit or deny the allegation in paragraph 78 of the Verified Complaint that "reviews reference a Zoom call." Defendants admit that Allen gave a presentation to other financial advisors on or around July 31, 2024. Defendants deny that Allen represented that he "owns and operates Balance Wealth Advisors."

79. Defendants lack knowledge or information sufficient at this time to either admit or deny the allegations in paragraph 79 of the Verified Complaint.

80. Defendants lack knowledge or information sufficient at this time to either admit or deny the allegations in paragraph 80 of the Verified Complaint.

81. Defendants lack knowledge or information sufficient at this time to either admit or deny the allegations in paragraph 81 of the Verified Complaint.

82. Defendants lack knowledge or information sufficient at this time to either admit or deny that "BWA's access to its Email Accounts has been restored for the time being." Defendants deny the remaining allegations in paragraph 82 of the Verified Complaint.

83. Defendants lack knowledge or information sufficient at this time to either admit or deny the allegations in paragraph 83 of the Verified Complaint.

84. Defendants deny the allegations in paragraph 84 of the Verified Complaint.

### COUNT I
**(UNLAWFUL ACCESS TO STORED COMMUNICATIONS
IN VIOLATION OF 18 U.S.C. §§ 2701, *ET SEQ.*)
(AGAINST ALLEN)**

85. Defendants repeat and incorporate by reference its answers to paragraphs 1 through 84 as though fully set forth herein.

86. Allen denies the factual allegations and legal conclusions in paragraph 86 of the Verified Complaint.

87. Allen denies the factual allegations and legal conclusions in paragraph 87 of the Verified Complaint.

88. Allen denies the allegations in paragraph 88 of the Verified Complaint.

89. Allen denies the factual allegations and legal conclusions in paragraph 89 of the Verified Complaint.

90. Paragraph 90 of the Verified Complaint restates Plaintiff's request for relief, to which no response is required. To the extent a response is required, Defendants deny all factual assertions therein.

## COUNT II
### (VIOLATION OF DEFEND TRADE SECRETS ACT, 18 U.S.C. §§ 1836 *ET SEQ.*)
### (AGAINST ALLEN)

91. Defendants repeat and incorporate by reference its answers to paragraphs 1 through 90 of the Verified Complaint.

92. Allen denies the factual allegations and legal conclusions in paragraph 92 of the Verified Complaint.

93. Allen denies the factual allegations and legal conclusions in paragraph 93 of the Verified Complaint.

94. Allen denies the allegations in paragraph 94 of the Verified Complaint.

95. Allen lacks knowledge or information sufficient at this time to either admit or deny the allegations in paragraph 95 of the Verified Complaint.

96. Allen lacks knowledge or information sufficient at this time to either admit or deny the allegations in paragraph 96 of the Verified Complaint.

97. Allen denies the allegations in paragraph 97 of the Verified Complaint.

98. Allen denies the allegations in paragraph 98 of the Verified Complaint.

99. Allen denies the allegations in paragraph 99 of the Verified Complaint.

100. Allen denies the allegations in paragraph 100 of the Verified Complaint.

101. Allen denies the allegations in paragraph 101 of the Verified Complaint.

102. Allen denies the factual allegations and legal conclusions in paragraph 102 of the Verified Complaint.

## COUNT III
### (BREACH OF CONTRACT)
### (AGAINST ALLEN AND BWA WELLESLEY LLC)

103. Defendants repeat and incorporate by reference its answers to paragraphs 1 through 102 as though fully set forth herein.

104. Defendants deny the allegations in paragraph 104 of the Verified Complaint.

105. Defendants deny the allegations in paragraph 105 of the Verified Complaint.

106. Defendants deny the allegations in paragraph 106 of the Verified Complaint.

107. Defendants deny the allegations in paragraph 107 of the Verified Complaint.

108. Defendants deny the allegations in paragraph 108 of the Verified Complaint.

109. Defendants deny the allegations in paragraph 109 of the Verified Complaint.

110. Defendants deny the allegations in paragraph 110 of the Verified Complaint.

111. Defendants deny the allegations in paragraph 111 of the Verified Complaint.

112. Defendants deny the allegations in paragraph 112 of the Verified Complaint.

113. Paragraph 113 of the Verified Complaint restates Plaintiff's request for relief, to which no response is required. To the extent a response is required, Defendants deny all factual assertions therein.

<u>C</u>OUNT <u>IV</u>
**(TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONS)**
**(AGAINST ALL DEFENDANTS)**

114. Defendants repeat and incorporate by reference its answers to paragraphs 1 through 113 as though fully set forth herein.

115. Defendants deny the factual allegations and legal conclusions in paragraph 115 of the Verified Complaint.

116. Defendants deny the factual allegations and legal conclusions in paragraph 116 of the Verified Complaint.

117. Defendants lack knowledge or sufficient information to admit or deny the allegations in paragraph 117 of the Verified Complaint.

118. Defendants deny the factual allegations and legal conclusions in paragraph 118 of the Verified Complaint.

119. Defendants deny the allegations in paragraph 119 of the Verified Complaint.

120. Defendants deny the allegations in paragraph 120 of the Verified Complaint.

121. Defendants deny the allegations in paragraph 121 of the Verified Complaint.

122. Defendants deny the allegations in paragraph 122 of the Verified Complaint.

## COUNT V
### (VIOLATION OF M.G.L.C. 93A, §§ 2, 11)
### (AGAINST ALL DEFENDANTS)

123. Defendants repeat and incorporate by reference its answers to paragraphs 1 through 122 as though fully set forth herein.

124. Paragraph 124 Verified Complaint consists of legal conclusions to which no response is required.

125. Paragraph 125 Verified Complaint consists of legal conclusions to which no response is required.

126. Defendants deny the factual allegations and legal conclusions in paragraph 126 of the Verified Complaint.

127. Defendants deny the allegations in paragraph 127 of the Verified Complaint.

128. Defendants deny the allegations in paragraph 128 of the Verified Complaint.

129. Defendants deny the allegations in paragraph 129 of the Verified Complaint.

130. Defendants deny the allegations in paragraph 130 of the Verified Complaint.

## COUNT VI
### (CONVERSION)
### (AGAINST ALLEN)

131. Defendants repeat and incorporate by reference its answers to paragraphs 1 through 130 as though fully set forth herein.

132. Allen denies the allegations in paragraph 132 of the Verified Complaint.

133. Allen denies the allegations in paragraph 133 of the Verified Complaint.

134. Allen denies the allegations in paragraph 134 of the Verified Complaint.

135. Allen denies the allegations in paragraph 135 of the Verified Complaint.

136. Allen denies the factual allegations and legal conclusions in paragraph 136 of the Verified Complaint.

### COUNT VII
### (DECLARATORY JUDGMENT)
### (AGAINST ALL DEFENDANTS)

137. Defendants repeat and incorporate by reference its answers to paragraphs 1 through 136 as though fully set forth herein.

138. Defendants admit the allegations in paragraph 138 of the Verified Complaint.

139. Defendants deny the factual allegations and legal conclusions in paragraph 139 of the Verified Complaint.

140. To the extent the allegations in paragraph 140 of the Verified Complaint seek to paraphrase or characterize the contents of a written agreement, the Defendants respectfully refer the Court to the text of the written document for its content. Defendants deny the allegations to the extent that they are inconsistent with the document or the events or dealings which occurred between the Parties and the signatories to the written agreement.

141. Defendants deny the allegations in paragraph 141 of the Verified Complaint.

142. Defendants deny the allegations in paragraph 142 of the Verified Complaint.

143. Defendants deny the allegations in paragraph 143 of the Verified Complaint.

144. Defendants deny the factual allegations and  legal conclusions in paragraph 144 of the Verified Complaint.

## AFFIRMATIVE DEFENSES

1.  Plaintiff fails to state a claim upon which relief may be granted.

2.  Plaintiff failed to mitigate their damages, and to the extent that plaintiff may be entitled to such damages, which defendants specifically deny, they are barred from any recovery therefrom.

3.  Plaintiff is barred from seeking or obtaining any relief from defendants by the equitable doctrine of unclean hands.

4.  Plaintiff's claims are barred because defendants fully performed any and all contractual duties that may have been owed to plaintiff under applicable law, except for those obligations the performance of which were excused by the conduct or omissions of plaintiff, including but not limited to plaintiff's breaches and/or failure to perform their obligations.

5.  Plaintiff's claims are barred because they committed breaches of contract and/or violated the implied duty of good faith and fair dealing.

6.   Plaintiff's claims are barred by the doctrines of waiver, laches, and/or estoppel.

7.  Plaintiff failed to include all of the necessary and indispensable parties required for the final and proper resolution of the subject dispute.

8. Defendants hereby reserve their right to assert additional defenses not asserted herein, as investigation and discovery may reveal the existence of such defenses not presently known to them.

## COUNTERCLAIMS

### PARTIES

1. Counterclaim plaintiff, David H. Allen ("Allen") is an individual resident of Tampa, Florida and Providence, Rhode Island. He is the founder of Balance Wealth Advisors. He is currently affiliated with Florida Financial Advisors, LLC ("FFA") as an investment advisor representative.

2. Counterclaim plaintiff, BWA Wellesley LLC ("BWA-W") is a Massachusetts corporation with its principal place of business located at 559 South Water Street, Providence, Rhode Island 02903.

3. Counterclaim plaintiff, Providence Financial Advisors, LLC ("PFA") is a Rhode Island corporation with its principal place of business located at 559 South Water Street, Providence, Rhode Island 02903 (the "Providence Office").

4. Counterclaim defendant BWA LPW LLC ("BWA"), is a Massachusetts corporation located at 57 River Street, Suite 300, Wellesley, Massachusetts (the "Wellesley Office").

5. Counterclaim defendant, Amy O'Connell ("O'Connell") is an individual resident of Newton, Massachusetts.

6. Counterclaim defendant, Leo Patrick White ("White") is an individual resident of Milton, Massachusetts.

## FACTUAL ALLEGATIONS

7. Allen has been in the financial services industry for over 30 years, first affiliating with Ameriprise Financial Services, Inc. ("Ameriprise"), on or around May 12, 1993.

8. Allen currently maintains a variety of professional designations including, but not limited to, his Series 7, Series 63, and Series 65 licenses.

9. In 2003 Allen hired White to assist him in servicing his clients.

10. At all relevant times White was an employee of Allen and/or Balance Wealth Advisors.

11. Starting in 2014 Allen began using "Balance Wealth Advisor" as his d/b/a name for his brokerage and investment advisory services.

12. On or around November 28, 2016 Allen affiliated with LPL Financial LLC ("LPL"), a broker-dealer, as a registered representative, independent contractor.

13. On or around December 1, 2016 Allen affiliated with registered investment advisor Stratos Wealth Partners, Ltd ("Stratos"), as an investment advisor representative.

14. In 2016 Allen met O'Connell through her position as a Manager of Advisor Relationships at Ameriprise.

15. Upon information and belief, while O'Connell resided in Green Bay, Wisconsin in 2016 she began a long-distance romantic relationship with Allen.

16. In January 2017 O'Connell began working part-time at Balance Wealth Advisors as Director of Operations.

17. Allen hired O'Connell as a full time Director of Operations/Office Manager on or around October 2018.

18. In December 2020 Allen parted ways with LPL and Stratos.

19. On or around December 11, 2020, Allen affiliated with Cadaret Grant & Co, Inc. ("Cadaret") as both a registered representative of Cadaret's broker-dealer entity and as an investment advisor representative for Cadaret's registered investment advisor arm.

20. Upon joining Cadaret, Allen was required to re-apply for registration in every state he maintained clients, including the Commonwealth of Massachusetts.

21. Unfortunately, the Massachusetts Securities Division (the "Securities Division") did not automatically approve Allen's re-registration.

22. Upon information and belief, to approve Allen's registration, the Securities Division required both Cadaret and Allen to enter into a "consent order" with requirements the Securities Division deemed necessary for Allen's re-registration.

23. Cadaret declined to enter into the consent order, essentially terminating Allen's affiliation with them on or around April 22, 2021.

24. On or around July 2021 O'Connell moved into Allen's home in Newton, Massachusetts with her two teenaged daughters.

25. Despite not being registered with Cadaret, Allen was able to remain the owner of Balance Wealth Advisors and work in a consulting position out of the Wellesley and Providence Offices.

26. While Allen was not permitted to and did not provide financial advice or conduct transactions in clients' accounts, he continued his personal and professional relationships with the clients he had acquired over the prior two decades.

27. In September 2022 Allen, White, and O'Connell executed five separate contracts: a Memorandum of Understanding, Purchase and Sale Agreement, Bill of Sale, Promissory Note, and Security Agreement.

28. The Memorandum of Understanding was backdated to May 3, 2021.

29. The Purchase and Sale Agreement, Bill of Sale, Promissory Note, and Security Agreement were backdated to March 1, 2022.

30. The five contracts memorialized the sale of Allen's book of business for $2.9 million, requiring BWA to, among other things, provide BWA-W or its designee, i.e. Allen, monthly payments of no less than $20,000.

31. On or around November 3, 2022 Allen, White, and O'Connell executed a Modification to Purchase and Sale Agreement.

32. The Modification to the Purchase and Sale Agreement contained a contingency clause wherein Allen could retain the assets contemplated in the original Purchase and Sale if he could not become fully affiliated with Cadaret.

20

33. On or around November 16, 2022, Allen re-registered with Cadaret as a registered representative and investment advisor representative.

34. Starting in May 2021, BWA made periodic monthly payments to Allen, or on Allen's behalf to other third parties.

35. Upon information and belief, the total payments made to Allen, or on Allen's behalf, is less than $1 million.

36. In December 2023 Cadaret informed Allen that they would be terminating his registration.

37. Allen, through counsel, negotiated the language to be placed on Allen's record with the Central Registration Depository[2] to state that "[Cadaret] is unwilling to enter into a proposed regulatory order with respect to supervision and oversight functions of [Allen] in connection with his licensure application in Massachusetts."

38. BWA has not provided Allen or BWA-W with any payments since December 2023, in violation of the terms of the Promissory Note, Purchase and Sale Agreement, and the Modification to the Purchase and Sale Agreement.

39. On or around January 2024 the counterclaim defendants informed Allen that they would no longer maintain the Providence Office.

40. In February 2024 Allen executed a new lease for the Providence Office, in his name only, with the plans to establish his own financial services company in the location.

---

[2] The Central Registration Depository, managed by FINRA, maintains the registration records of broker-dealer firms, branch offices, and associated individuals.

41. On February 12, 2024, Allen established Providence Financial Advisors, LLC in Rhode Island, with the location of its principal office at 559 South Water Street, Providence, Rhode Island 02903.

42. BWA does not maintain an office location in Providence, Rhode Island.

43. In March 2024, fully aware of the dispute between the parties, O'Connell contacted Redtail Technology, without Allen's knowledge or permission, and unilaterally transferred Allen's Redtail account to her name.

44. Redtail is a client relationship management tool which allows users like Allen to maintain notes and contact information of both a personal and professional nature.

45. Upon information and belief, Allen's Redtail account contained over a decade of his personal notes and information.

46. O'Connell has since refused to relinquish Allen's Redtail account.

47. On February 15, 2024 Allen contacted TPx, the company that managed the parties' telephone lines, requesting that numbers associated with the Providence Office be transferred to a new account in his name.

48. Upon information and belief, O'Connell, on behalf of BWA, has repeatedly refused to allow the transfer of the telephone numbers.

49. Instead, O'Connell has repeatedly reset the telephone numbers associated with Providence Office and Allen to go to her own telephone line, impeding Allen's ability to establish his new financial services business.

50. BWA continues to assert, via their website at www.balancewealthadvisor.com, that they maintain a physical location in the Providence Office despite having no physical location in Rhode Island.

51. In April 2024 O'Connell and Allen terminated their romantic relationship and no longer live together.

52. In July 2024 the parties attempted to mediate this dispute but were unsuccessful.

53. Upon information and belief, in August 2024 O'Connell contacted the Securities Division and made unfounded allegations concerning Allen.

54. Upon information and belief, O'Connell was not acting in good faith in reporting Allen's alleged misdeeds, instead lashing out in retaliation when the parties failed to come to an agreement at the mediation.

55. O'Connell has provided the Securities Division with email communications and other documentation in an attempt to disrupt Allen's ability to maintain his financial services licenses and business.

56. As a result of O'Connell's actions, the Securities Division opened an investigation into Allen.

57. On August 8, 2024, the Securities Division issued a subpoena *ad testificandum* requiring Allen to appear at the Securities Division for questioning.

58. As a result, Allen had to retain counsel and incur extensive legal fees and expenses.

59. On September 26, 2024, Allen appeared at the Securities Division in connection with the subpoena and endured several hours of questioning by Securities Division enforcement attorneys.

60. On October 1, 2024, LPL closed on its acquisition of Atria Wealth Solutions, the holding company for Cadaret.

61. Upon information and belief, White will register with LPL and, in contemplation of client accounts transferring to LPL, will receive approximately $750,000 in payment.

62. On August 7, 2024 Allen became an investment adviser representative for Florida Financial Advisors, an SEC registered investment advisory firm.

63. Pursuant to the Investment Advisers Act of 1940, and the rules promulgated therefrom, Florida Financial Advisors, and by affiliation, Allen, are regulated by the SEC and are not subject to regulation by Rhode Island or Massachusetts.

## COUNT I
### BREACH OF CONTRACT
### (AGAINST BWA AND WHITE)

64. Counterclaim plaintiffs repeat the allegations of paragraphs 1 through 63 of their Counterclaim and incorporate them by reference as if fully set forth herein.

65. In September 2022 White and O'Connell (on behalf of BWA) executed the Promissory Note.

66. Under the terms of these Promissory Note, BWA was required to pay BWA-W no less than $20,000 per month, plus simple interest of 6% on any unpaid balance, until the total purchase price of $2,900,000 had been paid.

67. Paragraph 4 of the Promissory Note states that if "any amounts due under the terms of this promissory note is not paid by [BWA] in full when due, [BWA] agrees to and shall pay all reasonable costs and expenses of collection, including…reasonable attorneys' fees…in connection with the enforcement or attempted enforcement of this promissory note."

68. Upon information and belief, BWA has not made any payments pursuant to the Promissory Note since December 2023.

69. BWA's failure and refusal to make payments to Allen/BWA-W constitutes a material breach of the Promissory Note.

70. Allen and BWA-W have had to retain counsel and expend legal fees and costs in order enforce the Promissory Note.

71. In September 2022 Allen (on behalf of BWA-W), O'Connell (on behalf of BWA), and White (on behalf of BWA and individually in his capacity as Guarantor)  executed the Security Agreement.

72. Under the terms of the Security Agreement BWA and White granted a security interest to secure their obligations under the Promissory Note in favor of BWA-W.

73. The Security Agreement granted BWA-W with a continuing security interest in BWA and White's assets, including, but not limited to, all "goodwill, trade secrets, computer programs and software, customer lists, trade names, trademarks, copyrights, franchises, licenses and patents."

74. Allen and BWA-W have been harmed by BWA and White's breach by at least $1,000,000.

**C<small>OUNT</small> II**
**T<small>ORTIOUS</small> I<small>NTERFERENCE WITH</small> B<small>USINESS</small> R<small>ELATIONS</small>**
**(A<small>GAINST ALL</small> C<small>OUNTERCLAIM</small> D<small>EFENDANTS</small>)**

75. Counterclaim plaintiffs repeat the allegations of paragraphs 1 through 74 of their Counterclaim and incorporate them by reference as if fully set forth herein

76. Counterclaim defendants have intentionally interfered with Allen and PFA's efforts to establish their new financial services business and obtain prospective clients by, amongst other things, claiming they maintain offices at PFA's location in Providence, forwarding telephone numbers associated with PFA and Allen to O'Connell, and retaining Allen's Redtail account.

77. Counterclaim defendants have taken these actions for the purpose of depriving Allen and PFA of the prospect of entering into advantageous and/or contractual relationships with their prospective customers.

78. This intentional interference by counterclaim defendants has caused Allen and PFA damages to its business reputation, economic damages in the form of lost prospective client relationships, and irreparable harm.

**C<small>OUNT</small> III**
**A<small>BUSE OF</small> P<small>ROCESS</small>**
**(A<small>GAINST</small> O'C<small>ONNELL</small>)**

79. Counterclaim plaintiffs repeat the allegations of paragraphs 1 through 78 of their Counterclaim and incorporate them by reference as if fully set forth herein.

80. Upon information and belief, counterclaim defendant O'Connell contacted the Massachusetts Securities Division concerning Allen in August 2024.

81. After O'Connell's communications with the Massachusetts Securities Division Allen was issued a subpoena to appear and provide testimony in connection with an investigation into his actions.

82. Upon information and belief, O'Connell contacted the Massachusetts Securities Division for an ulterior and illegitimate purpose.

83. As a result of O'Connell's actions Allen and PFA have suffered economic damages and irreparable harm.

**WHEREFORE**, the counterclaim plaintiffs request that the Court enter judgment in their favor and against BWA, White, and O'Connell on the claims set forth herein as a result of their unlawful conduct for any actual, consequential or other damages, to the extent ascertainable in an amount to be determined at trial, including attorneys fees, multiple damages, and any other such relief as this Court shall deem just and proper.


Dated: 5 November 2024                     Respectfully Submitted,

                                           DAVID H. ALLEN,
                                           BWA WELLESLEY LLC, AND
                                           PROVIDENCE FINANCIAL ADVISORS, LLC


                                            _/s/Kirsten Patzer_____
                                           Kirsten Patzer, BBO # 668564
                                           PRINCE LOBEL TYE LLP
                                           One International Place, Suite 3700
                                           Boston, Massachusetts 02110
                                           Telephone: 617.456.8024
                                           kpatzer@princelobel.com

**CERTIFICATE OF SERVICE**

I, Kirsten Patzer, certify that the foregoing filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on this 5th day of November 2024.

 */s/Kirsten Patzer*
Kirsten Patzer